UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

   -vs-

FRANK GIACOBBE, PATRICK OGIONY,          18-CR-108
KEVIN MORGAN, and TODD MORGAN,

                    Defendants.
_____

# AFFIDAVIT

STATE OF NEW YORK:
COUNTY OF MONROE:   ss.

     **DAVID ROTHENBERG,** being duly sworn, deposes and says:

     1.     I am an attorney admitted to practice before the United States District Court for the Western District of New York.

     2.     I am a principal in the firm of Rothenberg Law, counsel for defendant Todd Morgan in the above-captioned matter.

     3.     I submit this affidavit in response to the government's motion for an extension of time until November 26, 2018 to complete voluntary discovery in this case.

     4.     On July 25, 2018, I spoke with Assistant United States Attorney Douglas Penrose ("AUSA Penrose"). AUSA Penrose advised that the government was seeking an extension of its discovery deadline only, but not any of the subsequent deadlines set by the court.

     5.     For the reasons set forth below, the defense objects to the government's request for an extension of its discovery deadline only, without any adjustment of any of the other deadlines, particularly the deadline for the filing of defense motions.

6.   Todd Morgan appeared for arraignment on May 24, 2018. At that time, the court set a July 27, 2018 deadline for the completion of discovery by the government.

7.   Anticipating that the government's disclosures would be voluminous, the defense initiated a series of telephone conferences with the United States Attorney's Office in an effort to expedite and coordinate document disclosure.

8.   On June 5, 2018, the undersigned spoke with AUSA Penrose, as well as Mr. Bowman, who provides technical support for the United States Attorney's Office. In this initial conversation, which occurred about 10 days after arraignment, the government was unable to provide the defense with any details concerning either the volume of documents to be produced, or a timetable for this production. There was discussion, however, of possible "rolling production" of documents.

9.   On June 11, 2018, the defense next spoke with the government, at which time a representative of D4 was on the phone with everyone (D4 is the vendor who is assisting the defense with hosting and managing the e-discovery in this matter).

10.   During the June 11 phone call, AUSA Penrose advised the defense that the government had "two buckets of data". The first bucket consisted of data acquired by the government prior to the execution of search warrants at Morgan Management, et al. The second bucket, which included material seized during the search warrants, would be much more voluminous than the first, perhaps consisting of millions of documents.

11.   During the June 11 phone call, the defense requested that the government begin a rolling production of the "first bucket" of documents.

12.   The defense and the government next spoke on June 18, and once again there was a representative of D4 was on the telephone.

13. During our June 18 conference call, the government stated that the first "bucket" of documents consisted of approximately 150,000 documents. Although the government stated that it would not be able to begin production within the next week or two, it was willing to make a "rolling production" of documents.

14. However, no rolling production ensued. Although the defense and the government spoke on at least two subsequent occasions during July concerning the status of the government's production efforts, the protocols that would be observed for e-discovery, and the approximate volume of documents to be produced, there was no production whatsoever until the week of July 23, 2018.

15. Last week, the government uploaded its initial document production on a hard drive supplied by the defense. We are now advised by D4 that this initial production includes approximately 140,000 documents, consisting of about 877,000 pages.

16. Furthermore, it is important to point out that with this volume of e-discovery, additional time is needed for uploading the e-discovery and making the same available for attorney review.

17. In other words, the court should not assume that simply because a hard drive containing 140,000 documents was received at the beginning of last week, it was immediately available to the defense. There is an inherent lag time before such a volume of documents can be accessed and utilized by the defense. This delay will be substantially greater when the government produces its second "bucket" of several million documents.

18. Upon information and belief, the government's initial document production does not include all of the documents that were in the government's

possession prior to the execution of search warrants in May of this year. The government has advised the defense that there are some additional categories of documents not included within this initial production. Thus, although the court gave the government over two months to produce discovery, the government was unable, in that two-month period, to produce those documents that were already in its possession prior to the execution of warrants in May of this year.

19. More importantly, there is an enormous volume of documents to be produced aside from this initial "bucket". The government has advised the defense that it is screening 14 servers that were seized pursuant to various search warrants in May of this year.

20. Upon information and belief, the government is only at the very preliminary stages of reviewing these servers so that discoverable material can be extracted and produced. Before such production can occur, a protocol for the review of potentially privileged material must be established; a taint team must be created for the initial review of such material; all email communication must then be screened to eliminate privileged material (including attorney-client communications and spousal communications); and only then can the actual production begin.

21. The government's motion states that "over 5 million unique e-mails were seized" (Affidavit of Douglas A. Penrose, sworn to on July 27, 2018, ¶ 5).

22. If it took the government over two months to disclose approximately 140,000 documents, all of which were available to the government at the time of arraignment, and none of which needed to be screened or reviewed for privilege, it seems entirely unlikely that the government can screen, review, process, and disclose approximately 5 million emails in 120 days.

23.     Although AUSA Penrose proposed, in our July 25 telephone conversation, to make a rolling production of these emails, the defense notes that the government made a similar proposal with respect to the initial "bucket" of documents, but never actually engaged in any rolling production. Rather, it waited until the end of the discovery period and then disclosed material all at once.

24.     The defense respectfully submits that it is unreasonable to require the defense to review 5 million additional documents and simultaneously prepare all defense motions, within 60 days, which is all that would be left prior to the current deadline for filing motions.

25.     In short, although it is the government who failed to comply with the court's schedule, if the government's motion for extension is granted, and no other dates are adjusted, it will be the defense, and not the government, who will suffer prejudice by reason of the government's failure to comply.

26.     This seems entirely unfair and inappropriate.

27.     Accordingly, the defense opposes the government's motion, unless the defense is granted an equal extension for the filing of defense motions.

28.     The defense respectfully submits that at least six months should be granted the defense to review this enormous volume of discovery prior to the submission of motions.

29.     Accordingly, if the court's schedule is adjusted in response to the government's motion, the defense respectfully submits that all dates should be adjusted accordingly and consistently.

30.     Furthermore, if the government is unable to comply with whatever new schedule is set by the court, the defense respectfully requests that any further

- 6 -

adjustments to the court's schedule include concomitant adjustments for all dates following the completion of discovery.

**WHEREFORE,** defendant Todd Morgan respectfully requests that any extension granted the government for the completion of discovery be accompanied by an equal extension of all other deadlines set by the court at the time of arraignment in this matter, and requests such further relief as to the Court seems just, proper, and equitable.

                                                                                                            *s/ David Rothenberg*

                                                                                               David Rothenberg, Esq.
*Attorneys for Defendants*
ROTHENBERG LAW
45 Exchange Boulevard, Suite 800
Rochester, New York 14614
Tel:  (585) 232-1946
Fax:  (585) 232-4746
Email:  david@rothenberglawyers.com

Sworn to before me on the
1st day of August 2018.

    *s/ Beverly G. Evans*

                BEVERLY G. EVANS
     *Notary Public in the State of New York*
                 *Monroe County*
        *Commission Expires 10.30.2018*